# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| SHA-ANN ARNDTS, | : | APPEAL NO. | C-250687 |
|  |  | TRIAL NO. | A-2503184 |
| Plaintiff-Appellant, | : |  |  |
| vs. | : |  |  |
| UNIVERSITY OF CINCINNATI MEDICAL CENTER, | : | *JUDGMENT ENTRY* |  |
|  | : |  |  |
| Defendant-Appellee. | : |  |  |
|  | : |  |  |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to Appellant and 50% to Appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 8/12/2026.**

**Pursuant to App.R. 30, the clerk is directed to send all parties, or their counsel if represented, a copy of the court's judgment and note such action on the docket.**

**By:**_____
        **Administrative Judge**

[Cite as *Arndts v. Univ. of Cinti Med. Ctr.*, 2026-Ohio-3093.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| SHA-ANN ARNDTS, | : | APPEAL NO. | C-250687 |
| | | TRIAL NO. | A-2503184 |
| Plaintiff-Appellant, | : | | |
| vs. | : | | |
| UNIVERSITY OF CINCINNATI MEDICAL CENTER, | : | *O P I N I O N* | |
| | : | | |
| Defendant-Appellee. | : | | |
| | : | | |

Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: August 12, 2026

*Sha-Ann Arndts*, pro se,

*Calderhead, Lockemeyer & Peschke Law Office*, *Andrew B. Crane*, and *Bill Paliobeis*, for Defendant-Appellee.

**KINSLEY, Presiding Judge.**

{¶1} Plaintiff-appellant Sha-Ann Arndts appeals the judgment of the Hamilton County Court of Common Pleas granting defendant-appellee University of Cincinnati Medical Center's ("UC") Civ.R. 12(B)(6) motion to dismiss her complaint. We agree with the trial court that Arndts's claims for defamation, fraud, tampering with records, fraudulent billing, and failing to report abuse should be dismissed pursuant to Civ.R. 12(B)(6) because they fail to state claims upon which relief can be granted. But, as we explain in this opinion, we hold that Arndts's claim for a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") plausibly states a claim for the release of private medical information under the state statute codifying HIPAA. We accordingly affirm the trial court's judgment in part, reverse it in part, and remand the cause to the trial court for further proceedings.

### *Background*

{¶2} On June 30, 2025, Arndts sued UC for defamation, fraud, tampering with records, fraudulent billing, tampering with evidence, and failure to report abuse. Her complaint alleged that the fraud began in July of 2021, when she underwent surgery at UC, but that she did not discover it until December 2024.

{¶3} UC moved to dismiss Arndts's complaint pursuant to Civ.R. 12(B)(6). Its motion to dismiss alleged that because Arndts's claims arose from her July 2021 surgery, they were time-barred by the four-year statute of limitations applicable to medical claims. UC also argued that Arndts's complaint was barred by res judicata, as Arndts previously unsuccessfully sued UC for claims arising from her July 2021 hospitalization.

{¶4} On September 9, 2025, before the trial court ruled on UC's motion to dismiss, Arndts filed an amended complaint which omitted any reference to her July

2021 hospitalization. Arndts's amended complaint asserted the same defamation, fraud, tampering with records, and failure to report abuse claims she raised in her initial complaint. But it omitted the tampering with evidence claim and added a cause of action for alleged violations of HIPAA and R.C. Ch. 3798.

{¶5} UC again moved to dismiss Arndts's complaint pursuant to Civ.R. 12(B)(6). The trial court granted UC's motion, finding, without further explanation, that Arndts could prove no set of facts entitling her to relief.

{¶6} Arndts appealed.

## *Analysis*

{¶7} Representing herself, Arndts raises eight assignments of error, which are somewhat difficult to follow. In her first assignment of error, she argues that the trial court, in general, erred in granting UC's motion to dismiss, and she requests de novo review of that decision. As best we can tell, her remaining assignments of error raise specific issues related to the trial court's decision to grant the motion to dismiss. Because the trial court did not explain the basis for its decision, Arndts appears to assume hypothetical reasons that could have justified the trial court's judgment, based on the briefing by UC below, and then to argue in her second through eighth assignments of error why each of those reasons is incorrect. We analyze these arguments as best we can given the confusing nature of some of Arndts's briefing.

## *I. Civ.R. 12(B)(6)*

{¶8} Arndts's first assignment of error challenges the propriety of the trial court's judgment under Civ.R. 12(B)(6). "We review a trial court's decision granting a Civ.R. 12(B)(6) motion to dismiss de novo. . . . In reviewing such a motion, we must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." (Cleaned up.) *Ilboudo v. Cincinnati*

4

*Metro. Hous. Auth.*, 2025-Ohio-1386, ¶ 7 (1st Dist.).

**{¶9}** "Civ.R. 12(B)(6) is procedural in character, intended to test the sufficiency of the complaint and the materials incorporated into it." (Cleaned up.) *Vandemark v. Reder*, 2026-Ohio-50, ¶ 9 (1st Dist.). Relatedly, Civ.R. 8(A) requires a complaint to "contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." This is considered "notice pleading," which aims to provide fair notice of the claim with an opportunity for the adverse party to prepare a response. *Id*. at ¶ 10. Because notice is the goal, trial courts will not dismiss a complaint under Civ.R. 12(B)(6) "unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Thomas v. Othman*, 2017-Ohio-8449, ¶ 19 (1st Dist.).

**{¶10}** Under this standard, "the complaint should be examined to see if the allegations provide for relief under any viable legal theory." *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities*, 2002-Ohio-6344, ¶ 12. In doing so, the court must focus its inquiry on the four corners of the complaint and may not rely on evidence outside the complaint. *Zalvin v. Ayers*, 2020-Ohio-4021, ¶ 13 (1st Dist.).

### A. Defamation

**{¶11}** We first apply these standards to Arndts's claim for defamation. To establish a viable claim for defamation, Arndts was required to plead and prove that (1) a false and defamatory statement, (2) about her, (3) was published by UC without privilege to a third party, (4) with fault or at least negligence on UC's part, (5) that was either defamatory per se or caused special harm to her. *Martin v. Wegman*, 2019-Ohio-2935, ¶ 9 (1st Dist.).

**{¶12}** Defamation may either be defamatory per quod, meaning that it is interpreted by the listener to be defamatory, or defamatory per se, meaning that the statement on its face is defamatory. *Olthaus v. Niesen*, 2023-Ohio-4710, ¶ 12 (1st Dist.). If the statement is defamatory per quod, the plaintiff must plead and prove special damages, although no such requirement exists for defamation per se. *Martin* at ¶ 10. Special damages are those direct financial losses, including lost profits from a business endeavor, that result from the plaintiff's impaired reputation following a defamatory statement. *Id.* at ¶ 15.

**{¶13}** Arndts's amended complaint alleged that UC falsely claimed that she suffered from mental illness and addiction in statements to medical providers, police, individuals, and insurance companies and that it lacked privilege to do so. Arndts also claimed that UC acted with knowledge that its statements were false or with reckless disregard for their truth. These allegations established the basic elements of defamation. *Id.* at ¶ 9. But Arndts did not allege special damages. *See Dudee v. Philpot*, 2019-Ohio-3939, ¶ 73 (1st Dist.) (holding that plaintiff's allegations of "humiliation, embarrassment, anxiety, mental anguish, emotional distress, and damage to his reputation and career" were insufficient to claim the pecuniary harm required to establish special damages). We must therefore consider whether Arndts's allegations raised a claim for defamation per se or for defamation per quod.

**{¶14}** To constitute defamation per se, the communication must consist of words that (1) impute a charge of an indictable offense involving moral turpitude or infamous punishment, (2) impute an offensive or contagious disease intended to exclude one from society, or (3) tend to injure one in his trade or occupation. *Id.* at ¶ 13. Neither of UC's alleged statements—that Arndts suffered from mental illness and addiction—rise to this level.

6

**{¶15}** UC's alleged statement about addiction is similar to the defendant's statement in *King v. Barger*, 88 Ohio App.3d 564, 568 (2d Dist. 1993). There, King argued that the defendant's statement that she participated in a drug rehabilitation program constituted defamation per se because it was "tantamount to an allegation that [she] had engaged in a criminal offense involving moral turpitude or infamous punishment." *Id.* The court rejected that argument, holding instead that the statement "could have been considered defamatory only by inference or inuendo." *Id.* As the court observed, "a person can participate in a drug rehabilitation program without having used illicit drugs." *Id.*

**{¶16}** Like *King*, UC's alleged statement that Arndts suffered from addiction did not on its face suggest that Arndts had engaged in a crime of moral turpitude. Rather, the statement could only be classified as defamatory through interpretation. *Martin*, 2019-Ohio-2935, at ¶ 10 (1st Dist.). Arndts therefore alleged, at most, defamation per quod based on the statement that she suffered from addiction.

**{¶17}** This was also the case for UC's alleged statement that Arndts's suffered from mental illness. Mental illness is neither a crime nor "an offensive or contagious disease." *Id.* at ¶ 13. Rather, it is simply a health-related and relatively common diagnosis. This statement too constituted defamation per quod.

**{¶18}** Arndts contended in her amended complaint that UC's alleged statements had "devastating effects" on her career. A statement's tendency to injure the plaintiff in her trade or occupation can be a basis for finding a statement defamatory per se. *Martin*, 2019-Ohio-2935, at ¶ 13 (1st Dist.). However, Arndts did not provide any facts to support her assertion, such as the nature of her employment or how these statements affected it. "Mere unsupported conclusions regarding the elements of a claim are not taken as admitted and are insufficient to withstand a

motion to dismiss without sufficient factual support." *Olthaus*, 2023-Ohio-4710, at ¶ 8 (1st Dist.). Thus, the amended complaint did not allege facts that support a finding that the alleged statements tended to injure Arndts in her trade or profession.

**{¶19}** Given all of this, Arndts was required to plead special damages, which she failed to do. The trial court therefore correctly dismissed Arndts's defamation claim.

### B. R.C. 2307.60 Fraud Claims

**{¶20}** In addition to defamation, Arndts sued UC for fraud, tampering with records, and fraudulent billing. As to the fraud and tampering with records claims, Arndts specifically raised them pursuant to R.C. 2307.60(A)(1), which creates an independent civil cause of action for "anyone injured in person or property by a criminal act." Arndts did not explicitly plead her fraudulent billing claim this way, but R.C. 2307.60 appears to be the only vehicle through which she could have asserted that claim, as there exists no stand-alone civil claim for fraudulent billing.

**{¶21}** To succeed in a claim under R.C. 2307.60, a plaintiff "must provide evidence on each element of the underlying criminal act and the plaintiff's damages resulting from that act." *Gentry v. Silver Linings Agency*, 2024-Ohio-5503, ¶ 24 (1st Dist.). The plaintiff is not required to prove that the defendant was convicted of a crime. *Buddenbert v. Weisdack*, 2020-Ohio-3832, ¶ 11.

**{¶22}** Where a claim brought under R.C. 2307.60 also alleges fraud, it must satisfy Civ.R. 9(B)'s heightened pleading standard. *Vandemark*, 2026-Ohio-50, at ¶ 11 (1st Dist.). Civ.R. 9(B) mandates that "[i]n all averments of fraud of mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "To satisfy this requirement, a plaintiff should plead the time, place, and content of the false representation, the fact misrepresented, and the nature of what was obtained or

8

given as a consequence of the fraud along with the identity of the alleged fraudster." (Cleaned up.) *White v. Pitman*, 2020-Ohio-3957, ¶ 19 (1st Dist.).

**{¶23}** None of Arndts's three claims premised on fraud accomplished these requirements. Her fraud claim lacked information about the timing of the alleged fraud, as well as what was allegedly obtained as a result. Her tampering with records claim lacked an allegation that UC acted with the purpose to defraud, which was a required element. *See id.* Her fraudulent billing claim lacked similar details.

**{¶24}** Because Arndts failed to plead her three fraud-related claims with particularity as required by Civ.R. 9(B), the trial court correctly dismissed them under Civ.R. 12(B)(6).

### C. Failure to Report Abuse

**{¶25}** Arndts further sued UC for failure to report abuse under R.C. 5101.63(A)(1) and (2). That statute requires doctors, nurses, and hospital employees who have formed a reasonable belief that an adult is being abused to immediately report the suspected abuse to the county department of job and family services. But it does not appear to independently create a civil cause of action on the part of an allegedly abused adult when a medical professional fails to report.

**{¶26}** Arndts cites no authority, nor can we find any, that suggests that an allegedly abused adult may sue a health care provider under R.C. 5101.63. In the absence of such authority, the trial court did not err in dismissing Arndts's R.C. 5101.63 claim for failing to state a claim upon which relief can be granted.

### D. HIPAA and R.C. Ch. 3798

**{¶27}** Arndts's final claim against UC was for violating HIPAA and its state law corollary, R.C. Ch. 3798. These claims rested on Arndts's allegation that UC disclosed her private medical information to third parties without her consent and not for the

purpose of reporting any crime or safety issues.

**{¶28}** Regarding Arndts's HIPAA claim, "it is well-settled that a HIPAA violation does not create a private cause of action for the party whose information has been released." *Menorah Park Ctr. for Senior Living v. Rolston*, 2020-Ohio-6658, ¶ 36. Thus, the trial court properly dismissed Arndts's cause of action to the extent it relied upon HIPAA.

**{¶29}** Ohio law, however, recognizes "an independent tort exists for the unauthorized, unprivileged disclosure to a third party of nonpublic medical information that a physician or hospital has learned within a physician-patient relationship." *Biddle v. Warren Gen. Hosp.*, 86 Ohio St.3d 395, 401 (1999). And HIPAA does not preclude a patient from bringing a state-law cause of action for a breach of confidentiality. *Menorah Park Ctr. for Senior Living* at ¶ 30.

**{¶30}** Arndts did not specifically assert a cause of action for breach of confidentiality under *Biddle*. Nonetheless, "[i]f the facts set forth in the complaint entitle appellant to relief, it is wholly immaterial by what name the action is called." *Biddle* at 400. We therefore consider whether Arndts's amended complaint pleaded a state-law claim for the unauthorized release of nonpublic information to a third party that UC learned in the context of its doctor-patient relationship with her.

**{¶31}** In relevant part, paragraph 44 of Arndts's amended complaint alleged:

Defendant violated federal HIPPA law and ORC 3798 by freely giving both false medical information and medical information to third parties. Upon the research and disclosure of records from other sources in February of 2025 it was made clear that the Defendant freely shared medical information both false information and medical information without any consent of the Plaintiff and directly against her refusal to

sign to even give them permission to share her medical information with other medical facilities. The Defendant shared the information with other medical facilities, campus employees not medical employees, police. This medical information shared was not shared for purposes of reporting any crimes or upon any reporting of safety issues on behalf of the Defendant. This sharing was not related to any formal request of the third parties but was offered by Defendant's employees as false rationing for their behaviors. This clearly violates both the federal and state laws regarding privacy in medical records and any medical information of a patient.

**{¶32}** Although sparse, these allegations are sufficient to state a *Biddle* claim. In this paragraph, Arndts alleged that UC—which she identified elsewhere in the complaint as a medical provider—shared her medical information with third parties without her consent. By citing R.C. Ch. 3798, Arndts also grounded her claim in state law. She therefore pleaded a viable state-law claim for the unauthorized disclosure of privileged medical records.

**{¶33}** Because notice is the goal of Ohio's pleading rules, a complaint should not be dismissed "unless it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *Thomas*, 2017-Ohio-8449, at ¶ 19 (1st Dist.). Based on Arndts's pleading, it appears that she could prove a set of facts that would entitle her to recover for a breach of confidentiality under *Biddle*.

**{¶34}** Accordingly, the trial court erred in dismissing this claim under Civ.R. 12(B)(6). We accordingly sustain Arndts's first assignment of error as to her claim for the unauthorized disclosure of medical records and overrule it in all other respects.

11

## II. Res Judicata

**{¶35}** In her second assignment of error, Arndts argues that the trial court erred in dismissing her complaint because her claims were not subject to res judicata. Because we have determined that the trial court correctly dismissed Arndts's complaint as to her defamation, fraud-related, and failure to report abuse claims under Civ.R. 12(B)(6), this assignment of error is moot as to those claims. Arndts failed to state claims upon which relief could be granted, so any potential error by the trial court in determining other reasons for dismissal is immaterial. However, because Arndts's unauthorized disclosure of medical records claim under *Biddle* survives Civ.R. 12(B)(6), we consider whether the trial court could have dismissed it under the doctrine of res judicata.

**{¶36}** "It is well-established that res judicata is not a proper basis for dismissal under Civ.R. 12(B)(6)." *Siniscalchi v. K Hovnanian Meadow Lakes, LLC*, 2026-Ohio-1777, ¶ 16 (8th Dist.). This is so because application of res judicata often involves comparing the facts of the current case with the facts of the previous case, which requires consideration of information outside the four corners of the complaint. *Ora v. Fitness Intern., LLC*, 2021-Ohio-2824, ¶ 6 (1st Dist.). Since the court is precluded from reviewing facts outside the complaint at the Civ.R. 12(B)(6) stage, it cannot conduct a proper res judicata review. *Id.*

**{¶37}** UC raised res judicata as a basis for dismissal in its Civ.R. 12(B)(6) motion below. But it is unclear from the trial court's order whether it relied upon res judicata in granting the motion given the trial court's lack of analysis. To the extent the trial court dismissed Arndts's *Biddle* claim on the basis of res judicata, doing so was in error.

**{¶38}** Accordingly, we sustain Arndts's second assignment of error in part as

it relates to her *Biddle* claim and dismiss the remainder as moot.

### III. Remaining Assignments of Error

{¶39} Arndts's third, fourth, fifth, sixth, seventh, and eighth assignments of error all raise arguments related to perceived errors in the trial court's dismissal of her complaint. Our disposition of her first and second assignments of error makes these arguments moot. The trial court had a valid basis for dismissing all but Arndts's *Biddle* claim under Civ.R. 12(B)(6), rendering moot any other assignments of error directed to the reasons for dismissal. We accordingly decline to address these arguments. And we have sustained Arndts's first assignment of error, which resurrects her *Biddle* claim. Any other assignments of error directed to the validity of that claim are therefore also moot, and we decline to address them.

### Conclusion

{¶40} We sustain Arndts's first and second assignments of error in part as to her *Biddle* claim and overrule them in all other respects. The remainder of Arndts's assignments of error are moot. The trial court's judgment dismissing Arndts's complaint is affirmed as to her claims for defamation, fraud, tampering with records, fraudulent billing, and the failure to report abuse. The trial court's judgment dismissing Arndts's *Biddle* claim is reversed, and the cause is remanded to the trial court for further proceedings on that claim.

Judgment affirmed in part, reversed in part, and cause remanded.

ZAYAS and CROUSE, JJ., concur.